UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kenneth S. Daywitt,                                        Civ. No. 19-2632 (PAM/KMM)

        Plaintiff,

v.                                                         **MEMORANDUM AND ORDER**

Jodi Harpstead, Nancy A.
Johnston, Justin Joslin, Tara
Osborne, Travis Cowell,
Darlene Harris, Ryan Fahland,
Cheryl Floren, and William
Robinson,

        Defendants.

---

This matter is before the Court on Defendants' Motion to Dismiss the Second

Amended Complaint. For the following reasons, the Motion to Dismiss is denied.

## BACKGROUND

Plaintiff Kenneth Daywitt is civilly committed to the Minnesota Sex Offender

Program ("MSOP"). (2d Am. Compl. (Docket No. 33) ¶ 9.) He is openly gay (id. ¶ 10),

and he claims that the individual-capacity employees either knowingly or negligently put

him in the same cell as an individual who was known to be homophobic, threatening, and

mentally ill. (Id. ¶ 16.) On May 29, 2018, the individual attacked Daywitt, injuring him.

(Id. ¶¶ 21-22.)

Daywitt initially brought this lawsuit under 42 U.S.C. § 1983 against 16 employees

of MSOP in their individual capacities, and against Minnesota's DHS Commissioner and

MSOP's Executive Director in their official capacities. (Compl. (Docket No. 1).)

Defendants moved to dismiss the original Complaint, and Daywitt moved to amend it. The Court granted the motion to amend but also granted Defendants' motion to dismiss in part, ordering Daywitt to replead his claims against the individual-capacity Defendants. (Docket No. 29.) The Second Amended Complaint is Daywitt's attempt to comply with the Court's direction.

Daywitt has now narrowed his claims to seven MSOP employees, plus the DHS Commissioner and MSOP Executive Director. Unlike Daywitt's first two Complaints, this new pleading describes each Defendant's role at MSOP: Defendant Justin Joslin was Unit Director for Daywitt's housing unit (id. ¶ 28), Defendant Tara Osborne was Clinical Unit Director for that unit (id. ¶ 29), Defendant Travis Cowell was the supervising security officer for the unit (id. ¶ 30), Defendant Darlene Harris was Daywitt's primary Clinical Therapist (id. ¶ 31), Defendant Ryan Fahland was Assistant Unit Director for Daywitt's housing unit (id. ¶ 32), and Defendants Cheryl Floren[1] and William Robinson were Security Counselors for the unit (id. ¶¶ 33, 34). (Compare Am. Compl. (Docket No. 21) ¶ 8 (stating that individual Defendants "were . . . duly appointed and acting employees of MSOP").)

The Second Amended Complaint raises the same three claims as the previous pleadings: Count 1 is a claim under § 1983 against the individual Defendants for deliberate indifference and failure to protect. Count 2 is the same claim against the Commissioner

---

[1] According to Defendants, Floren no longer works at MSOP and has not agreed to be represented by the Attorney General's office. Daywitt has not served Ms. Floren. The Court will require Daywitt to serve her or will dismiss her from this matter for failure to prosecute.

and Executive Director, contending that MSOP "maintained an unconstitutional policy/custom/practice of failing to protect LGBTQ patients/clients from hate crimes and harassment based on sexual orientation."  (2d Am. Compl. ¶ 40.)  Count 3 claims that the individual Defendants were negligent in failing to protect Daywitt from harm.

Defendants once again argue that Counts 1 and 3 fail to state claims against the individual Defendants on which relief can be granted.  They also contend that qualified and official immunity protect Defendants from liability.

**DISCUSSION**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6).  A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true.  Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim.  Iqbal, 556 U.S. at 678.

**A.     Deliberate Indifference**

A deliberate-indifference claim requires the civil detainee to establish both that the "alleged deprivation of rights was sufficiently [objectively] serious," Farmer v. Brennan, 511 U.S. 825, 835 (1994), and that the defendants were subjectively deliberately indifferent

to the detainee's health or safety.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1977).  An objectively serious deprivation means that the detainee is held "under conditions posing a substantial risk of serious harm."  <u>Irving v. Dormire</u>, 518 F.3d 441, 446 (8th Cir. 2008).  The Eighth Amendment "requires prison officials to 'take reasonable measures to guarantee' inmate safety by protecting them from attacks by other prisoners."  <u>Young v. Selk</u>, 508 F.3d 868, 871 (8th Cir. 2007) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)).  But officials who "respond reasonably to a perceived risk" do not violate the Eighth Amendment "even if the harm ultimately was not averted."  <u>Prater v. Dahm</u>, 89 F.3d 538, 542 (8th Cir. 1996) (quotation omitted).  To survive a motion to dismiss, Daywitt must specify "how each individual defendant was involved in the alleged deprivation of his constitutional rights."  <u>Sorenson v. Minn. Dep't of Human Servs.</u>, Nov. 14cv4193, 2015 WL 251720, at *7 (D. Minn. Jan. 20, 2015) (Montgomery, J.).

The Second Amended Complaint contains many nearly identical allegations against each individual Defendant, set forth in lettered paragraphs under the paragraph number describing that Defendant's role at MSOP.  Daywitt first contends that he complained to each Defendant "approximately" a certain number of times.  (<u>E.g.</u>, 2d. Am. Compl. ¶ 29 (Daywitt "complained to Defendant Osborne approximately 80 times" about the assailant).)  Daywitt goes on to allege that he "reported to Defendant [Name] that [the assailant] was engaged in a pattern of constant and ongoing sexual harassment and intimidation against [Daywitt] and that [he] was specifically targeting [Daywitt's] sexual orientation, including referring to [Daywitt] as 'fag' and 'queer.'"  (<u>Id.</u> ¶¶ 28.a, 29.a, 30.a, 31.a, 32.a, 33.a, 34.a.)  Daywitt "reported to Defendant [Name] that [his assailant] was

4

always tense, angry, and agitated towards [Daywitt] . . . and that [the assailant] acted out with anger and agitation towards [Daywitt] every time [Daywitt] attempted to use common areas of the cell." (Id. ¶¶ 28.b, 29.b, 30.b, 31.b, 32.b, 33.b, 34.b.)  And Daywitt "reported that [the assailant] harbors hate for gay men and that [he] was harassing and intimidating [Daywitt] specifically due to [Daywitt's] status as a gay man [and] that [he] threatened to assault [Daywitt] if [Daywitt] made any sexual advances towards [the assailant]." (Id. ¶¶ 28.c, 29.c, 30.c, 31.c, 32.c, 33.c, 34.c.)  Daywitt also alleges as to each Defendant that, before the date of the assault, the Defendant "personally observed and heard [the assailant's] profane and sexually explicit yelling outbursts in the unit" including the assailant's statements that "'if it was up to me, you'd [fags] be dead'" and "'all homos have to die.'" (Id. ¶¶ 28.g, 29.f, 30.g, 31.g, 32.f, 33.h, 34.f.)  These allegations are not substantively different from those Daywitt made previously; he merely separated them out as to each Defendant, rather than alleging as he did in early pleadings that the assailant made these threats in front of MSOP staff, including a list of all individual Defendants' names. (E.g., Am. Compl. ¶ 12.)

The Second Amended Complaint also makes specific allegations as to a several Defendants.  Daywitt alleges that two other MSOP clients complained to Defendant Joslin about the assailant's behavior toward Daywitt in the month leading up to the assault, including reporting to Joslin that the assailant "was sexually harassing and intimidating [Daywitt] and specifically targeting [Daywitt] because [Daywitt] is gay. . . . [and that the assailant] had recently threatened to assault [Daywitt]." (Id. ¶¶ 28.f.)  Daywitt also alleges that the assailant "threatened to assault [Daywitt] directly to" Defendants Cowell and

5

Floren (id. ¶¶ 30.f, 33.f), and that Daywitt had a conversation with Defendant Floren before the assault in which she admitted that the assailant "hated homosexuals" and told Daywitt that "she herself would not be able to live in the same room with [the assailant] due to his behavior and aggression." (Id. ¶ 33.g.) Daywitt asserts that other MSOP clients complained to Defendant Harris that the assailant was "a homophobe" and that he "has threatened to assault 'fags' just due to their sexual orientation." (Id. ¶ 31.f.)

Finally, Daywitt alleges as to six of the individual Defendants that he "continuously requested protection from [the assailant] and requested to be immediately separated from [him]" but that each Defendant "refused to offer any assistance and refused to take any action to protect [Daywitt] from [the assailant]." (Id. ¶¶ 28.h, 29.g, 30.h, 31.h, 32.g, 33.i.) With respect to the seventh individual Defendant, Robinson, Daywitt contends that not only did he refuse to "complete reports pertaining to [Daywitt's] complaints" but that, on the day of the assault, Robinson heard "yelling and commotion in [Daywitt's] room" and "had reason to know the commotion he was hearing related to [the assailant's] aggression and likely physical attack on [Daywitt]" but Robinson "failed to take any action in response . . . and failed to intervene in any way." (Id. ¶ 34.i.) He asserts that each individual Defendant's inaction and failure to respond violated various MSOP policies. (Id. ¶¶ 28.i, 29.h, 30.i, 31.i, 32.h, 33.j, 34.j.)

The Second Amended Complaint thus contains specific allegations about some Defendants. While the Court would prefer plaintiffs to make more individualized allegations, it is plausible that Daywitt complained to these individuals, that these individuals all heard the assailant make threats, and that they did nothing to protect

6

Daywitt. The Court must take the plausible allegations as true; whether those allegations will ultimately prove true is not at issue.

## B.     Qualified Immunity

Defendants also argue that qualified immunity protects them from Daywitt's § 1983 claim. When evaluating a motion to dismiss based on qualified immunity, "[a] court considers whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction." Hager v. Arkansas Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013). Here, Daywitt has plausibly pled his § 1983 claim against the individual Defendants, and thus has pled the first element of the qualified-immunity inquiry.

Defendants contend that the constitutional rights on which Daywitt relies were not clearly established, namely that it was not clearly established that failure to move a plaintiff detainee whose roommate made threats against groups in which the plaintiff belongs was deliberately indifferent to a substantial risk of serious harm. But as the Eighth Circuit has noted, "it was no doubt clearly established long before 2004, when [the plaintiff] was assaulted, that the eighth amendment required prison officials 'to protect prisoners from violence at the hands of other prisoners.'" Young, 508 F.3d at 875. Defendants argue that Young provides no support for Daywitt's claims here, because in that case the inmate and roommate lived together for less than two days before the assault, while here Daywitt and his assailant lived in the same cell for nearly a month before the assault. But Daywitt need not find a case with the exact facts as his allegations. "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v.

7

Pelzer, 536 U.S. 730, 741 (2002).

Defendants point out that recent Supreme Court opinions indicate that a higher degree of factual similarity is required in some circumstances to meet the "clearly established" requirement. E.g., Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (stating that courts should not "define clearly established law at a high level of generality"). But there is a difference between the constitutional rights at issue in Mullenix, which involved a Fourth Amendment excessive-force claim in which the officer was required to make split-second decisions about the use of force on a fleeing suspect and the Eighth Amendment failure-to-protect inquiry, which often does not require such instant decisionmaking. Id. ("Such specificity is especially important in the Fourth Amendment context."). And given that the instant Motion is for dismissal under Rule 12(b)(6), Daywitt need only plausibly plead the clearly established constitutional violation. Whether Daywitt's claims will survive a motion for summary judgment is a different matter for another day.

At this stage the Court must take Daywitt's allegations as true and draw all reasonable inferences in his favor. He asserts that he and others informed Defendants of the assailant's violent threats and that Defendants themselves witnesses those threat, but yet did nothing to protect Daywitt. If borne out by discovery, these allegations support the denial of Defendants' claim to qualified immunity.

## C.  Negligence

Given the Court's conclusion that Daywitt has plausibly pled his § 1983 claim, he has also sufficiently established the elements of his negligence claim. The question then becomes whether he has plausibly pled that each Defendant committed a "willful or

malicious wrong," Vassallo ex rel. Brown v. Majeski, 842 N.W.2d 456, 462 (Minn. 2014), as required to overcome Defendants' official immunity.

Unlike the objective inquiry for the application of qualified immunity, the "willful and malicious" standard for official immunity is a subjective one: "whether the official has intentionally committed an act that he or she had reason to believe is prohibited." Baribeau v. City of Minneapolis, 596 F.3d 465, 482 (8th Cir. 2010) (internal quotations omitted). But the ultimate "finding [of malice] must be based on specific facts evidencing bad faith." Semler v. Klang, 743 N.W.2d 273, 279 (Minn. Ct. App. 2007) (internal quotation omitted). Because this is a Motion to Dismiss, Daywitt must only plausibly plead facts which, if true, could support the inference that Defendants' inaction was intentional.

The implication of Defendants' argument is that Daywitt has no evidence that any of them was willfully or maliciously indifferent to his complaints or to other indications that his assailant would attack him.  At this stage, however, Daywitt's allegations are enough to plausibly plead such willful indifference.  He asserts that he complained multiple times to each Defendant, that other detainees brought his assailant's behavior to the attention of some Defendants, and that all Defendants heard and saw the assailant's threatening behavior and failed to act.  On a motion to dismiss, this is enough.

**CONCLUSION**

Daywitt has succeeded in plausibly pleading his claims. Accordingly, **IT IS HEREBY ORDERED that**:

1.      Defendants' Motion to Dismiss (Docket No. 34) is **DENIED**.

2.      Daywitt shall serve the Second Amended Complaint on Defendant Cheryl Floren within 14 days of the date of this Order. Failure to do so will result in the Court dismissing Daywitt's claims against Defendant Floren without prejudice for failure to prosecute.

Dated:  September 24, 2020

                                                    s/ Paul A. Magnuson
                                                    Paul A. Magnuson
                                                    United States District Court Judge

10